DOROTHEA M. ZINSER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zinser v. Commissioner
Docket No. 8353-74.
United States Tax Court
T.C. Memo 1978-256; 1978 Tax Ct. Memo LEXIS 259; 37 T.C.M. (CCH) 1109; T.C.M. (RIA) 78256; July 11, 1978, Filed George W. Akers, for the petitioner. Matthew W. Stanley, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's Federal income tax as follows: Year
Deficiency
1967
$ 18,530.83
1968
83,191.45
Petitioner does not dispute the amount of the deficiencies. The only issue for decision is whether petitioner is relieved of liability for the deficiencies as an "innocent spouse" pursuant to section 6013(e). [1]
FINDINGS OF FACT Some facts were stipulated and are so found. Petitioner, Dorothea M. Zinser, resided in Seattle, Wash. *260 , at the time of filing her petition herein. She and her former husband, Dr. Cyrus Maxfield (hereinafter "Maxfield"), filed joint Federal income tax returns for 1967 and 1968. In 1936 petitioner and Maxfield were married. Petitioner, a high school graduate, was 24 years old at the time. Maxfield, a naturopathic physician, completed his medical training in the early 1950's. During the years in question, as a part of his practice, Maxfield operated several medical clinics. Throughout this same period, petitioner was a home-maker. Prior to 1964 Maxfield provided petitioner with an allowance of about $ 250 every two weeks. The money was used by petitioner primarily for mortgage payments, utilities, auto and furniture payments, groceries, and clothing. [2] In 1964 and continuing throughout the years in question, Maxfield increased the allowance to $ 750 every two weeks.[3]
*261 During the relevant period herein, petitioner was active as a Jehovah's Witness. As such, she spent a considerable amount of time visiting potential members of the congregation, making book and magazine placements, and conducting Bible study. In accordance with her religious philosophy as a Jehovah's Witness, petitioner believed that, as a Christian wife, she did not have the right to voice any strong objections to the activities of her husband, or to act upon any objections which she believed were appropriate. In 1967 and 1968, Maxfield made the following purchases and investments: 1967 Item
Cash Outlay (Approximate)
Jewelry and
$ 2,700
Sterling Silver
Vacation
5,000
Small Fishing Boat with
*
Outboard Motor
Investments
3,950
1968 Mercedes
[1] 1,400
Total
$ 13,050
1968
Lincoln Mark III [2]
*
Airplane
[1] $ 12,000
Real Property: Newport Shores
[1] 50,000
Washington & Arizona
*
Investments
34,000
Furniture
8,000
Total
$ 104,000
*262 Petitioner was not consulted in advance, nor did she know in advance, of any of these purchases or investments. It was only subsequent to making the expenditures that Maxfield informed her of them. When petitioner would inquire as to the costs of these items, she was told only that the cash outlay was minimal.In accordance with her religious tenets, petitioner did not inquire further into Maxfield's financial affairs. Petitioner and Maxfield's joint Federal income tax returns for 1967 and 1968 were prepared by a professional tax return preparation service. Maxfield would not discuss and petitioner was unaware of the contents of either return. Furthermore, she did not sign the 1968 return. Although the reported net income was considerably less, the Schedules C filed with the couple's 1967 and 1968 returns showed the gross receipts from Maxfield's practice for the two years in issue to be in excess of $ 300,000. In the same two-year period, Maxfield also received considerable income from the performance of illegal abortions but did not report such income on the returns for those years. At the time the returns were filed, petitioner had no knowledge that income had been *263 omitted therefrom. In late 1968 Maxfield was indicted for the crime of performing illegal abortions. [4] Petitioner knew nothing of Maxfield's illegal activities until she was told of them by her daughter who read of the indictment in the newspaper. Subsequently, petitioner and Maxfield separated and were divorced in November 1969. Pursuant to a property settlement dated July 31, 1969, petitioner received the following as a result of her 33 years of marriage to Maxfield: [5]
Date of Item
Acquisition
Approximate Value
Automobile
1967
$ 5,000
Real Estate
1966
36,000
Real Estate
1968
22,550
Partnership Int.
1968
5,000
Residence
1965
18,798
Savings Account
Unknown
14,000
Checking Account
Unknown
100
Furniture
1964-1968
[6] 5,000
Paintings
1969
[7] 6,000
Clothes, Jewelry,
Silver, etc.
Unknown
1,600
Total
$ 114,048
*264 As the chart illustrates the aggregate value of the property acquired by Maxfield during the years in issue and received by petitioner in the property settlement was less than $ 56,000. [8]
Respondent, in a statutory notice of deficiency, determined deficiencies *265 in petitioner's Federal income tax for the years 1967 and 1968 in the amounts of $ 18,530.83 and $ 83,191.45, respectively. The deficiencies were based on respondent's belief that petitioner and Maxfield understated their taxable income by $ 49,832.73 in 1967 and $ 161,177.80 in 1968. [9]
OPINION We are to decide whether petitioner is entitled to relief from tax liability as an innocent spouse under section 6013(e). For petitioner to be deemed an "innocent spouse" and relieved from liability for the deficiency, she must prove each of the three elements provided for in the statute.[10]. *266 Respondent has conceded the first requisite of the statute, viz., an omission from gross income of an amount properly includible therein which is attributable to her husband, and which is in excess of 25 percent of the amount of gross income stated in the joint return. Section 6013(e)(1)(A). The second statutory requirement is that in signing the return, petitioner "did not know of, and had no reason to know of" the omitted income. Section 6013(e)(1)(B). Based upon our evaluation of the testimony and evidence presented at trial, we are satisfied that petitioner had no actual knowledge of the omitted income. To satisfy her burden of proof with respect to whether she had reason to know of the omitted income, petitioner must show that a reasonably prudent taxpayer, with her knowledge of the family's finances, would have no reason to know of the omissions. ; . Respondent maintains that certain unusual or lavish expenditures made by Maxfield in 1967 and 1968 were sufficient to put petitioner on notice of the omitted income. We disagree. During the *267 years in issue, Maxfield acquired interests in certain real estate and partnership ventures. In so doing, he did not consult with petitioner prior to making the acquisitions and only informed her of the investments in a general way after they were made. From petitioner's testimony at trial we are convinced that she did not appreciate the extent of the investments. When petitioner did inquire as to the costs of these various acquisitions, she was told by Maxfield that the cash outlay was minimal. Because of her stronglyheld religious beliefs, petitioner fully believed and trusted Maxfield. In view of the foregoing, we do not believe the investments made by Maxfield during the years in issue were sufficient to cause petitioner to question whether the funds for the investments came from a source other than that shown on the return. Other major expenditures by Maxfield during the years involved included amounts used to purchase an airplane on an installment basis, a small fishing boat, a vacation, some jewelry, two automobiles, and some furniture. In light of Maxfield's established and apparently successful medical practice, we do not believe that these expenditures could be described *268 as lavish or extraordinary so as to put petitioner on notice of omitted income. Accordingly, we conclude that under the facts as presented the expenditures made by Maxfield during the years in issue were insufficient to put a reasonably prudent taxpayer with petitioner's knowledge of the family finances on notice of the omitted income. [11] See Finally, section 6013(e)(1)(C) requires a determination of whether petitioner significantly benefited from the omitted income and whether, taking into account all other facts and circumstances, it would be inequitable to hold petitioner liable for the tax. A determination under this provision is subjective and essentially factual. , revd. on other grounds . Respondent contends that petitioner significantly *269 benefited from the omitted income through transfers of property to her pursuant to the property settlement in connection with her divorce from Maxfield. We do not agree. In deciding whether petitioner benefited significantly, we must find that she received some benefit in addition to ordinary support. A benefit in this sense encompasses unusual transfers of property to a spouse. As set forth in our Findings, upon her divorce from Maxfield in 1969, petitioner received property worth about $ 114,000 of which approximately $ 56,000 was acquired during 1967 and 1968. From the record it is not clear what portion of the $ 56,000 was attributable to the omitted income; however, in view of the large sums of money generated from Maxfield's practice, we presume that a significant percentage of the total property acquired in 1967 and 1968 and received by petitioner was obtained with funds other than the omitted income. Considering that petitioner had been married to Maxfield, a successful physician, for 33 years during which time the couple had been accumulating an estate, we do not believe that the value of the property transferred to *270 petitioner was so large as to be considered unusual. [12]Further, taking into account petitioner's divorce from Maxfield, coupled with the fact that petitioner knew nothing of Maxfield's illegal activities, we conclude that it would be inequitable to hold petitioner liable for the deficiencies attributable to the omitted income. Accordingly, we hold that petitioner is entitled to the relief from liability for the deficiency provided in section 6013(e). Decision will be entered for the petitioner.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Any amount not so expended was deposited by petitioner in a bank account. These deposited funds were eventually used to purchase a house received by Maxfield upon his divorce from petitioner in 1969. ↩
3. Apparently the increase in the allowance was necessary because during the period from 1964 through 1965, Maxfield and petitioner purchased a new residence, furniture, and automobile which presumably resulted in increased periodic payments.↩
*. Unclear from record. ↩
1. Items were purchased on an installment basis. The amount shown represents the initial cash outlay plus installment payments made during 1967 and 1968 to the extent such amounts are determinable from the record. ↩
2. The model year of the Lincoln purchased is not clear from the record.↩
4. Maxfield was later convicted and served five years in the penitentiary.↩
5. Under the terms of the same property settlement, Maxfield, among other items, received: shares of stock in five different corporations, two automobiles, a housetrailer, an airplane, a fishing boat, several checking accounts, various insurance policies, numerous interests in real estate, and other miscellaneous investments.↩
6. Petitioner's testimony as it originally appeared in the transcript indicated the value of the furnishings at $ 35,000. In her reply brief, petitioner contended that the transcript was in error and that "$ 3-5,000" was the testimony that was given. After reviewing the tapes of the testimony at trial to refresh its own recollection, the Court was convinced an error was made in the transcript and, upon its own motion, entered an order correcting the transcript to read $ 5,000. ↩
7. Hereinafter it will be assumed, for purposes of convenience, that the paintings received by petitioner were acquired in 1968.↩
8. This figure assumes the following cash outlays in either 1967 or 1968: Mortgage payments
on residence
$ 4,000
Furniture
2,000
Clothes, Jewelry,
Silver, etc.
1,000 In addition, the $ 56,000 figure assumes that of the $ 14,000 in the savings account, $ 10,000 was added during 1967 and 1968.↩
9. The amount of the omissions was determined by a net worth computation and was apparently attributable for the most part to Maxfield's abortion activities.↩
10. SEC. 6013(e) provides in part: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In general.--Under regulations prescribed by the Secretary, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.↩
11. Further, in light of the fact that petitioner was given a $ 750 allowance every two weeks for household expenses since 1964, we do not believe, as respondent contends, her receipt of the allowance during 1967 and 1968 was sufficient to have put her on notice of omitted income.↩
12. Respondent, on brief, in arguing that petitioner significantly benefited from the omitted income used a figure of $ 35,000 in valuing the furnishings in the house received by petitioner upon her divorce in 1969. The record clearly shows that the house was furnished over the period from 1964 through 1968 for about $ 10-$ 14,000. Notwithstanding the error in the transcript on this point (see n. 6, supra↩), in view of respondent's knowledge of the fact of this case, his assertion for a $ 35,000 valuation figure is to say the least a bit strange.